## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

SECURITES AND EXCHANGE
COMMISSION,

                              **Plaintiff,**

        v.

RAMKUMAR V. RAYAPUREDDY,

                              **Defendant.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**ANSWER AND AFFIRMATIVE
DEFENSES**

**22 Civ. 1592**

**JURY TRIAL DEMANDED**

Defendant Ramkumar Rayapureddy ("**Mr. Rayapureddy**"), by and though his

undersigned counsel, answers the Complaint of Plaintiff Securities and Exchange Commission

("**SEC**" or "**Plaintiff**") and alleges additional or affirmative defenses as follows[1]:

### SUMMARY[2]

1.      **PARAGRAPH NO. 1**:

This case involves insider trading by Rayapureddy and his former work colleague and close

friend Dayakar R. Mallu ("Mallu") in the securities of Mylan N.V. ("Mylan" or the "Company").

**RESPONSE**:

This paragraph purports to be a summary of Plaintiff's claims and contains conclusions of

law, neither of which requires a response.

---

[1]     The allegations set forth in the Complaint arise from the same operative facts as and largely overlap those
asserted in *United States v. Rayapureddy*, 22-cr-285 (W.D. Pa.).  That proceeding is currently under
consideration by the United States District Court for the Western District of Pennsylvania.  Accordingly, Mr.
Rayapureddy asserts in this Answer, upon the advice of counsel, the rights guaranteed to him by the Fifth
Amendment of the United States Constitution.  Mr. Rayapureddy reserves the right to amend this Answer.

[2]     In response to each allegation in the Complaint, including as already set forth herein, Mr. Rayapureddy
further and alternatively respectfully declines to respond to each such allegation and asserts his rights under
the United States Constitution and the laws, including, but not limited to, the Fifth Amendment right against
self-incrimination.

2.     **PARAGRAPH NO. 2:**

Between September 2017 and July 2019, Rayapureddy unlawfully tipped Mallu material nonpublic information concerning the Company's financial results, an acquisition, and at least one drug application approval by the U.S. Food and Drug Administration ("FDA"), knowing that, or recklessly indifferent to whether, Mallu would trade on such information.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.

3.     **PARAGRAPH NO. 3:**

Mallu then unlawfully traded on that information, illicitly gaining at least $7,264,008 while avoiding losses of $703,337.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.  Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.

4.     **PARAGRAPH NO. 4:**

In exchange for the tips, Mallu shared a portion of his illicit trading profits with Rayapureddy.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.  Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.

5.    **PARAGRAPH NO. 5:**

By engaging in the conduct described in this complaint, Rayapureddy violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.

**JURISDICTION AND VENUE**

6.    **PARAGRAPH NO. 6:**

This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), 21A, and 27 of the Exchange Act Section 27 [15 U.S.C. §§ 78u(d), 78u(e), 78u-1, and 78aa].

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.

7.    **PARAGRAPH NO. 7:**

Venue lies in this District under Sections 21(d), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u-1, and 78aa].  Among other things, certain of the acts, practices, and courses of business constituting the violations of the federal securities laws alleged herein occurred within the Western District of Pennsylvania.  Rayapureddy resides and works in the Western District of Pennsylvania, and improperly tipped Mallu material nonpublic information about Mylan, a company that is headquartered in the Western District of Pennsylvania.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.

**DEFENDANT**

8.    **PARAGRAPH NO. 8:**

**Rayapureddy**, age 54, resides in Pittsburgh, Pennsylvania.  Rayapureddy was hired by Mylan in 2014, ultimately rising to the rank of Global Chief Information Officer ("CIO") in January 2016.  Rayapureddy was a close friend and colleague of Mallu when Mallu was employed at Mylan, and the two remained close friends after Mallu departed the Company.

**RESPONSE**:

Mr. Rayapureddy admits that he is Ramkumar Rayapureddy.  Mr. Rayapureddy further admits that he resides in Pittsburgh, Pennsylvania and that he was hired by Mylan in 2014.  Mr. Rayapureddy also admits that he was promoted to Global Chief Information Officer ("CIO") in January 2016.  Mr. Rayapureddy respectfully declines to respond to the remaining allegations contained in this Paragraph and asserts his rights under the United States Constitution and the laws, including, but not limited to, the Fifth Amendment right against self-incrimination.

## OTHER RELEVANT ENTITIES AND INDIVIDUALS

9.     **PARAGRAPH NO. 9:**

**Mallu**, age 52, lives in Orlando, Florida.  Mallu began working at Mylan in May 2011.  In August 2014, he was promoted to the position of Global Producer Functions IT, and served in a role until he separated from Mylan in March 2017.

**RESPONSE**:

Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.

10.    **PARAGRAPH NO. 10:**

**Mylan** was a pharmaceutical company registered in the Netherlands with headquarters on Canonsburg, Pennsylvania.  Until November 2020, when it merged with Upjohn Inc., Mylan's

securities were registered with the Commission pursuant to Section 12(b) of the Exchange Act and traded on NASDAQ under the symbol "MYL."

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required. Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.

11.     **PARAGRAPH NO. 11:**

**Pfizer Inc.** ("Pfizer") is a pharmaceutical company incorporated in Delaware and headquartered in New York, New York.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required. Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.

12.     **PARAGRAPH NO. 12:**

**Upjohn Inc.** ("Upjohn") was Pfizer's off-patent branded and generic established medicines business, which merged with Mylan in November 2020.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required. Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.

## TERMS USED IN THIS COMPLAINT

13.   **PARAGRAPH NO. 13:**

A stock option, commonly referred to as an "option," gives its purchase/holder the option to buy or sell shares of an underlying stock at a specified price (the "strike price") before a specified time (the "expiration").  Options are generally sold in "contracts," which give the option holder the opportunity to buy or sell 100 shares of an underlying stock.  If the holder does not exercise the option prior to the expiration date, the option expires are worthless.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.  Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning the term "stock option" because the phrase is vague and ambiguous, and on that basis denies the allegations in this Paragraph.

14.   **PARAGRAPH NO. 14:**

A "call" option gives the purchase/holder of the option the right, but not the obligation, to purchase a security at a specified strike price prior to expiration.  Generally, the buyer of a call option anticipates that the price of the underlying security will increase prior to expiration.  If the call option's strike price is above the price at which the underlying stock is trading, the call option is considered to be "out of the money," because it would be unprofitable to exercise the call and pay more for the stock than the price for which it could be obtained in the market.  Conversely, if the strike price is below the then-current market price, the call is considered to be "in the money," because one could exercise the option, obtain the stock at the strike price, and then sell it at the higher market price for a profit.  For a given expiration month, out of the money options are typically cheaper to buy than those that in the money.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.  Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning the term "call option" because the phrase is vague and ambiguous, and on that basis denies the allegations in this Paragraph.

15.  **PARAGRAPH NO. 15:**

A "put" option gives the purchase/holder of the option the right, but not the obligation, to sell a security at a specified strike price prior to expiration.  Generally, the buyer of a put option anticipates that the price of the underlying security will decrease prior to expiration.  If the put option's strike price is below the price at which the underlying stock is trading, the put option is considered to be "out of the money," because it would be unprofitable to exercise the put and sell the stock at a lower price than the price for which it could be sold in the market.  Conversely, if the strike price is above the then-current market price, the put is considered to be "in the money," because one could exercise the option and sell the stock at the higher strike price for a profit.  For a given expiration month, out of the money options are typically cheaper to buy than those that are in the money.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.  Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning the term "put option" because the phrase is vague and ambiguous, and on that basis denies the allegations in this Paragraph.

**FACTUAL ALLEGATIONS**

**I.      RAYAPUREDDY LEARNED MATERIAL NONPUBLIC INFORMATION**

16.  **PARAGRAPH NO. 16:**

At all times pertinent to this complaint, through his position at Mylan, Rayapureddy learned material nonpublic information relating to Mylan and its business, financial performance, products, and potential corporate transactions, including the information discussed in more detail in this complaint that he tipped Mallu.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.

## II.   RAYAPUREDDY TIPPED MATERIAL NONPUBLIC INFORMATION IN VIOLATION OF A DUTY OWED TO MYLAN'S SHAREHOLDERS AND THE COMPANY

17.   **PARAGRAPH NO. 17:**

At all times pertinent to this complaint, Rayapureddy owed a duty to Mylan's shareholders and the company to maintain the confidentiality of material nonpublic information regarding Mylan.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.

18.   **PARAGRAPH NO. 18:**

On or about October 5, 2014, Rayapureddy acknowledged receipt of Mylan's Code of Conduct, which specifically prohibited trading in Mylan securities while in possession of material nonpublic information about the Company or causing or recommending others do so. Additionally, in his employment agreement with Mylan, Rayapureddy agreed not to use or disclose any Mylan confidential information other than in the ordinary course of Mylan's business in furtherance of its interests.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.  Further, Mylan's Code of Conduct is a document which speaks for itself and is the best evidence of its

terms, and any allegations in this Paragraph that are inconsistent with the document are denied. Further, Mr. Rayapureddy respectfully declines to respond to the remaining allegations contained in this Paragraph and asserts his rights under the United States Constitution and the laws, including, but not limited to, the Fifth Amendment right against self-incrimination.

19. **PARAGRAPH NO. 19:**

At all times pertinent to this complaint, Mallu knew Rayapureddy was privy to material nonpublic information regarding Mylan.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required. Additionally, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning the term "privy" because the phrase is vague and ambiguous, and on that basis denies the allegations in this Paragraph. Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.

20. **PARAGRAPH NO. 20:**

Mallu further knew that Rayapureddy was subject to a duty to keep that information confidential because, among other things, Mallu was familiar with Mylan's Code of Conduct from his time working at the Company.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required. Additionally, Mylan's Code of Conduct is a document which speaks for itself and is the best evidence of its terms, and any allegations in this Paragraph that are inconsistent with the document are denied.

Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.

21. **PARAGRAPH NO. 21:**

Notwithstanding his obligation to maintain the confidentiality of Mylan material nonpublic information, Rayapureddy tipped material nonpublic information to Mallu on at least three separate occasions after Mallu separated from Mylan, knowing that, or recklessly indifferent to whether, Mallu would trade on such information, as set forth in paragraphs 27 through 49.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.  Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.

22. **PARAGRAPH NO. 22:**

Rayapureddy tipped this information in exchange for a personal benefit.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.

23. **PARAGRAPH NO. 23:**

Rayapureddy and Mallu established a meaningfully close personal relationship while working together at Mylan between October 2014 and March 2017.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.  Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of

the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.

24.   **PARAGRAPH NO. 24:**

The two maintained this friendship following Mallu's separation from Mylan and at all times pertinent to this complaint.  Among other things, Rayapureddy and Mallu regularly spoke on the telephone, messaged each other, and socialized in person in the United States as well as abroad, both before and after Mallu's separation from Mylan.

**RESPONSE**:

Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.  Mr. Rayapureddy respectfully declines to respond to the remaining allegations contained in this Paragraph and asserts his rights under the United States Constitution and the laws, including, but not limited to, the Fifth Amendment right against self-incrimination.

25.   **PARAGRAPH NO. 25:**

Additionally, the two shared both work and cultural interests, visited each other's homes, and attended events with one another's families.

**RESPONSE**:

Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.  Mr. Rayapureddy respectfully declines to respond to the remaining allegations contained in this Paragraph and asserts his rights under the

United States Constitution and the laws, including, but not limited to, the Fifth Amendment right against self-incrimination.

26. **PARAGRAPH NO. 26:**

At all times pertinent to this complaint, Rayapureddy and Mallu also had an understanding that Mallu would share a portion of his trading profits with Rayapureddy in exchange for the material nonpublic information provided by Rayapureddy.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.  Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.  Mr. Rayapureddy respectfully declines to respond to the remaining allegations contained in this Paragraph and asserts his rights under the United States Constitution and the laws, including, but not limited to, the Fifth Amendment right against self-incrimination.

**A.     The October 3, 2017 FDA Approval**

27. **PARAGRAPH NO. 27:**

In or around September 2017, Rayapureddy became aware, through his position at Mylan, that Mylan would soon publicly announce that the FDA had approved Mylan's Abbreviated New Drug Applications for Glatiramer Acetate Injections, which represented the first generic options for Copaxone, a multiple sclerosis treatment.

**RESPONSE**:

Mylan's Abbreviated New Drug Applications for Glatiramer Acetate Injections is a document which speaks for itself and is the best and evidence of its terms, and any allegations in this Paragraph that are inconsistent with the document are denied.  Further, Mr. Rayapureddy

respectfully declines to respond to the allegations contained in this Paragraph and asserts his rights under the United States Constitution and the laws, including, but not limited to, the Fifth Amendment right against self-incrimination.

28.   **PARAGRAPH NO. 28:**

Knowing or expecting the announcement to have a positive impact on Mylan's stock price, Rayapureddy tipped this information to Mallu in September 2017 both in person and during telephone calls so that Mallu could trade on it.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.  Additionally, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning the term "positive impact" because the phrase is vague and ambiguous, and on that basis denies the allegations in this Paragraph. Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.  Mr. Rayapureddy respectfully declines to respond to the remaining allegations contained in this Paragraph and asserts his rights under the United States Constitution and the laws, including, but not limited to, the Fifth Amendment right against self-incrimination.

29.   **PARAGRAPH NO. 29:**

On September 29, 2017, Rayapureddy informed Mallu by telephone that the announcement would occur soon.  That same day, Mallu purchased 1,100 Mylan call option contracts in his brokerage account for $799,945.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.  Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.  Additionally, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning the term "call option" because the phrase is vague and ambiguous, and on that basis denies the allegations in this Paragraph.   Mr. Rayapureddy respectfully declines to respond to the remaining allegations contained in this Paragraph and asserts his rights under the United States Constitution and the laws, including, but not limited to, the Fifth Amendment right against self-incrimination.

30.   **PARAGRAPH NO. 30:**

On October 3, 2017, after the market closed, Mylan announced the FDA approval of Mylan's Abbreviated New Drug Applications for Glatiramer Acetate Injections.

**RESPONSE**:

Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.  Additionally, Mylan's announcement is a document which speaks for itself and is the best and evidence of its terms, and any allegations in this Paragraph that are inconsistent with the document are denied.

31.   **PARAGRAPH NO. 31:**

The following day, Mylan's share price closed at $37.80, which was $5.27 or 16.2% higher than the previous day's closing price of $32.53.  The value of Mallu's options contracts increased by $691,555.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.  Additionally, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning the term "options contracts" because the phrase is vague and ambiguous, and on that basis denies the allegations in this Paragraph.  Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.

32.   **PARAGRAPH NO. 32:**

During at least one conversation concerning this announcement, Rayapureddy and Mallu confirmed their understanding that Mallu would pay Rayapureddy a portion of his trading profits in exchange for the material nonpublic information Rayapureddy provided.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.  Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.  Mr. Rayapureddy respectfully declines to respond to the remaining allegations contained in this Paragraph and asserts his rights under the United States Constitution and the laws, including, but not limited to, the Fifth Amendment right against self-incrimination.

**B.    The February 26, 2019 Fourth Quarter and Fiscal Year 2018 Earnings Announcement**

33.   **PARAGRAPH NO. 33:**

On January 30, 2019, Rayapureddy became aware, through his position at Mylan, that Mylan would announce financial results lower than expected by the market for the fourth quarter and full year 2018.

**RESPONSE**:

Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph. Additionally, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning the phrase "lower than expected" because the phrase is vague and ambiguous, and on that basis denies the allegations in this Paragraph. Mr. Rayapureddy respectfully declines to respond to the remaining allegations contained in this Paragraph and asserts his rights under the United States Constitution and the laws, including, but not limited to, the Fifth Amendment right against self-incrimination.

34.    **PARAGRAPH NO. 34:**

Rayapureddy knew or expected that the financial results would have a negative impact on Mylan's stock price and, several weeks later, tipped this information to Mallu using a secure messaging and calling application so that Mallu could trade on it.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required. Additionally, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning the phrase "negative impact" because the phrase is vague and ambiguous, and on that basis denies the allegations in this Paragraph. Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations

concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.  Mr. Rayapureddy respectfully declines to respond to the remaining allegations contained in this Paragraph and asserts his rights under the United States Constitution and the laws, including, but not limited to, the Fifth Amendment right against self-incrimination.

35.   **PARAGRAPH NO. 35:**

On February 26, 2019, after being tipped by Rayapureddy, Mallu paid $949,888 to close 1,407 Mylan put option contracts that he had originally written the year before.  In other words, Mallu expected Mylan's share price to decrease and sought to avoid losing money on his existing position.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.  Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.  Additionally, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning the term "put option" because the phrase is vague and ambiguous, and on that basis denies the allegations in this Paragraph. Further, Mr. Rayapureddy respectfully declines to respond to the remaining allegations contained in this Paragraph and asserts his rights under the United States Constitution and the laws, including, but not limited to, the Fifth Amendment right against self-incrimination.

36.   **PARAGRAPH NO. 36:**

Additionally, that same day, Mallu sold 5,502 Mylan call option contracts, earning $3,058,148, and used those premiums to purchase 7,074 Mylan put option contracts, including one

series that expired only three days later, for $2,367,103.  Mallu made these trades to profit on the decrease in Mylan's share price that he expected to occur.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.  Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.  Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning the terms "call option" and "put option" because these phrases are vague and ambiguous, and on that basis denies the allegations in this Paragraph.

37.   **PARAGRAPH NO. 37:**

On February 26, 2019, after the market closed, Mylan announced fourth quarter and full year 2018 financial results that were lower than expected by the market.  Additionally, the Company projected 2019 guidance below analysts' estimates.

**RESPONSE**:

Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.  Further, Mylan's announcement is a document which speaks for itself and is the best and evidence of its terms, and any allegations in this Paragraph that are inconsistent with the document are denied.

38.   **PARAGRAPH NO. 38:**

The following day, Mylan's share price closed at $26.01, which was $4.52 or 15.06% lower than the previous day's closing price.

**RESPONSE**:

Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.

39.   **PARAGRAPH NO. 39:**

By closing his existing put option contracts before the announcement, Mallu avoided losses of $703,337.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.  Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.  Additionally, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning the term "put option" because the phrase is vague and ambiguous, and on that basis denies the allegations in this Paragraph.

40.   **PARAGRAPH NO. 40:**

Additionally, the negative news announced by Mylan caused the value of Mallu's newly opened options contracts to increase by $4,298,040.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.  Additionally, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning the term "options contracts" because the phrase is vague and ambiguous, and on that basis denies the allegations in this Paragraph.  Further, Mr. Rayapureddy

denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.  Additionally, Mylan's announcement is a document which speaks for itself and is the best and evidence of its terms, and any allegations in this Paragraph that are inconsistent with the document are denied.

**C.    The July 29, 2019 Merger Announcement**

41.    **PARAGRAPH NO. 41:**

On May 2, 2019, the Mylan Board of Directors was contacted by Pfizer management concerning a possible combination of Mylan and Upjohn, Pfizer's off-patent branded and generic established medicines business.

**RESPONSE**:

Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.

42.    **PARAGRAPH NO. 42:**

On May 8, 2019, representatives of Mylan and Pfizer discussed the possible business combination and the need for each to conduct due diligence in order to evaluate the transaction.

**RESPONSE**:

Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.

43.    **PARAGRAPH NO. 43:**

Over the next several weeks, Mylan granted Pfizer and its advisors access to a virtual data room containing proprietary information about Mylan and its business operations.

**RESPONSE**:

Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.

44.   **PARAGRAPH NO. 44:**

Rayapureddy was involved in integration planning and due diligence for Mylan relating to the transaction with Pfizer and understood that the possibility of a business combination with Pfizer and all related discussions and due diligence was nonpublic, confidential information.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.  Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.  Mr. Rayapureddy respectfully declines to respond to the remaining allegations contained in this Paragraph and asserts his rights under the United States Constitution and the laws, including, but not limited to, the Fifth Amendment right against self-incrimination.

45.   **PARAGRAPH NO. 45:**

Rayapureddy tipped Mallu about the impending merger, conveying to Mallu that he believed the merger would be well received and have a positive impact on Mylan's stock price, and periodically updated Mallu on the progress of the negotiations.  Rayapureddy knew that, or was recklessly indifferent to whether, Mallu would trade on such information.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.  Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.  Mr. Rayapureddy respectfully declines to respond to the remaining allegations contained in this Paragraph and asserts his rights under the United States Constitution and the laws, including, but not limited to, the Fifth Amendment right against self-incrimination.

46.   **PARAGRAPH NO. 46:**

Rayapureddy and Mallu discussed the transaction several times using a secure messaging and calling application and, in mid-July 2019, Rayapureddy informed Mallu that Mylan would soon announce the transaction with Pfizer.

**RESPONSE**:

Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.  Further, Mr. Rayapureddy respectfully declines to respond to the remaining allegations contained in this Paragraph and asserts his rights under the United States Constitution and the laws, including, but not limited to, the Fifth Amendment right against self-incrimination.

47.   **PARAGRAPH NO. 47:**

On the basis of that information, between July 18, 2019 and July 23, 2019, Mallu purchased 13,003 Mylan call option contracts for $8,412,432.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.  Additionally, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning the term "option contracts" because the phrase is vague and ambiguous, and on that basis denies the allegations in this Paragraph.  Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.  Additionally, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning the term "call option" because the phrase is vague and ambiguous, and on that basis denies the allegations in this Paragraph.

48.    **PARAGRAPH NO. 48:**

On July 29, 2019, before the market opened, Mylan and Pfizer jointly announced that Mylan would merge with Upjohn, Pfizer's off-patent branded and generic established medicines business, to create a new pharmaceutical company.

**RESPONSE**:

Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.  Further, the announcement by Mylan and Pfizer is a document which speaks for itself and is the best and evidence of its terms, and any allegations in this Paragraph that are inconsistent with the document are denied.

49.    **PARAGRAPH NO. 49:**

That day, Mylan's share price closed at $20.78 per share, which was $2.32 or 12.57% higher than the prior trading day's closing price. The value of Mallu's options contracts increased by $2,274,413.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required. Additionally, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning the term "options contracts" because the phrase is vague and ambiguous, and on that basis denies the allegations in this Paragraph. Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.

### III. MALLU MAKES CASH PAYMENTS TO RAYAPUREDDY IN EXCHANGE FOR MATERIAL NONPUBLIC INFORMATION CONCERNING MYLAN

50. **PARAGRAPH NO. 50:**

On several occasions following Mallu's trades, Mallu personally made or directed others to make payments in Indian rupees to Rayapureddy or one or more individuals Rayapureddy designated, in exchange for the material nonpublic information concerning Mylan that Rayapureddy had tipped to Mallu.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required. Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph. Mr. Rayapureddy respectfully declines to respond to the remaining allegations contained in this Paragraph and asserts his rights under the United States

Constitution and the laws, including, but not limited to, the Fifth Amendment right against self-incrimination.

51.   **PARAGRAPH NO. 51:**

Rayapureddy directed Mallu to make these payments in person, in India, in cash in order to avoid detection.

**RESPONSE**:

Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.  Further, Mr. Rayapureddy respectfully declines to respond to the remaining allegations contained in this Paragraph and asserts his rights under the United States Constitution and the laws, including, but not limited to, the Fifth Amendment right against self-incrimination.

**IV.   RAYAPUREDDY VIOLATED THE FEDERAL SECURITIES LAWS**

52.   **PARAGRAPH NO. 52:**

As detailed above, the information about the announcements Rayapureddy tipped to Mallu was material and nonpublic.  A reasonable investor would have viewed the information as being important to his or her investment decision.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.  Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.  Additionally, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning the term "reasonable investor" because the phrase is vague and ambiguous, and on that basis denies the

allegations in this Paragraph.  Mr. Rayapureddy respectfully declines to respond to the remaining allegations contained in this Paragraph and asserts his rights under the United States Constitution and the laws, including, but not limited to, the Fifth Amendment right against self-incrimination.

53.   **PARAGRAPH NO. 53:**

As a corporate insider, Rayapureddy owed a duty to Mylan's shareholders.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.

54.   **PARAGRAPH NO. 54:**

Pursuant to Mylan's Code of Conduct, Rayapureddy also owed a duty to Mylan not to tip material nonpublic information to any other person so that they could trade in Mylan securities on the basis of the information.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.  Further, Mylan's Code of Conduct is a document which speaks for itself and is the best evidence of its terms, and any allegations in this Paragraph that are inconsistent with the document are denied.

55.   **PARAGRAPH NO. 55:**

In breach of his duty owed to shareholders of Mylan and the company, Rayapureddy knowingly or recklessly tipped Mallu material nonpublic information concerning Mylan's drug approvals, financial performance, and merger with Upjohn, knowing that, or recklessly indifferent to whether, Mallu would trade on this information.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.  Further, Mr. Rayapureddy respectfully declines to respond to the remaining allegations contained in this

Paragraph and asserts his rights under the United States Constitution and the laws, including, but not limited to, the Fifth Amendment right against self-incrimination.

56.   **PARAGRAPH NO. 56:**

Rayapureddy and Mallu knew, or were reckless in not knowing, that Rayapureddy breached this duty by tipping Mallu material nonpublic information concerning Mylan's drug approvals, financial performance, and merger with Upjohn, while knowing that, or being recklessly indifferent to whether, Mallu would trade on this information.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.  Further, Mr. Rayapureddy respectfully declines to respond to the remaining allegations contained in this Paragraph and asserts his rights under the United States Constitution and the laws, including, but not limited to, the Fifth Amendment right against self-incrimination.

57.   **PARAGRAPH NO. 57:**

Rayapureddy and Mallu shared a meaningfully close and personal relationship.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.  Additionally, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.  Mr. Rayapureddy respectfully declines to respond to the remaining allegations contained in this Paragraph and asserts his rights under the United States Constitution and the laws, including, but not limited to, the Fifth Amendment right against self-incrimination.

58.   **PARAGRAPH NO. 58:**

Rayapureddy received financial payments from Mallu as a "quid pro quo" in exchange for tipping material nonpublic information.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.  Further, Mr. Rayapureddy respectfully declines to respond to the remaining allegations contained in this Paragraph and asserts his rights under the United States Constitution and the laws, including, but not limited to, the Fifth Amendment right against self-incrimination.

59.   **PARAGRAPH NO. 59:**

Rayapureddy received a personal benefit in exchange for tipping material nonpublic information concerning Mylan's drug approvals, financial performance, and merger with Upjohn to Mallu.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.  Further, Mr. Rayapureddy respectfully declines to respond to the remaining allegations contained in this Paragraph and asserts his rights under the United States Constitution and the laws, including, but not limited to, the Fifth Amendment right against self-incrimination.

60.   **PARAGRAPH NO. 60:**

Mallu knew, consciously avoided knowing, was reckless in not knowing, or should have known that Rayapureddy disclosed the information in breach of that duty and that Rayapureddy received a personal benefit.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.  Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of

the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.

61. **PARAGRAPH NO. 61:**

When Rayapureddy tipped the material nonpublic information to Mallu, Mallu assumed the duty to maintain the confidentiality of the information. Mallu breached this duty by knowingly or recklessly trading on the material nonpublic information.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required. Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.

62. **PARAGRAPH NO. 62:**

Rayapureddy knew, or was reckless in not knowing, that it was a violation of the securities law to tip Mallu material nonpublic information concerning Mylan's drug approvals, financial performance, and merger with Upjohn.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.

63. **PARAGRAPH NO. 63:**

Mallu knew, or was reckless in not knowing, that it was a violation of the securities law to trade on the basis of material nonpublic information concerning Mylan's drug approvals, financial performance, and merger with Upjohn.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.  Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.

## CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

64.   **PARAGRAPH NO. 64:**

The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1-63.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.  Further, Mr. Rayapureddy denies having knowledge or information sufficient to form a belief as to the truth of the allegations concerning any persons or entities other than Mr. Rayapureddy, and on that basis denies the allegations in this Paragraph.  Mr. Rayapureddy respectfully declines to respond to the remaining allegations contained in this Paragraph and asserts his rights under the United States Constitution and the laws, including, but not limited to, the Fifth Amendment right against self-incrimination.

65.   **PARAGRAPH NO. 65:**

By engaging in the conduct described above, Rayapureddy, directly or indirectly, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly has

a)      employed one or more devices, schemes, or artifices to defraud:

b)      made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

c)      engaged in one or more acts, practices, or course of business which operated or would operate as a fraud or deceit upon other persons.

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.

66.     **PARAGRAPH NO. 66:**

By reason of the foregoing, Rayapureddy has violated and, unless enjoined, will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] ad Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**RESPONSE**:

This Paragraph contains conclusions of law to which no response is required.

## PRAYER FOR RELIEF

WHEREFORE, defendant Ramkumar Rayapureddy denies that Plaintiff is entitled to any relief and respectfully requests that the Complaint be dismissed with prejudice.

## AFFIRMATIVE DEFENSES

Defendant states the following affirmative and other defenses, without admitting any allegation not otherwise admitted and without assuming any burden of proving any fact that is otherwise Plaintiff's burden to prove.

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFESE

The Complaint is barred by due process, in whole or in part, where Mr. Rayapureddy had no fair notice that his conduct could be unlawful.

### THIRD AFFIRMATIVE DEFENSE

The SEC's injunctive relief claim is barred by a failure to allege a reasonable likelihood that Mr. Rayapureddy will violate the securities laws in the future.

### FOURTH AFFIRMATIVE DEFENSE

The SEC is not entitled to civil penalties for the conduct alleged in the Complaint.

### FIFTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, because the allegedly false statements and omissions are not material.

### SIXTH AFFIRMATIVE DEFENSE

Mr. Rayapureddy acted, at all times, in good faith.

### SEVENTH AFFIRMATIVE DEFENSE

The SEC is not entitled to civil penalties for the conduct alleged in the Complaint.

## EIGHTH AFFIRMATIVE DEFENSE

The SEC's claims for disgorgement are barred as a matter of law.

Mr. Rayapureddy reserves the right to assert additional affirmative defenses that may arise during the course of discovery.

Dated:   Washington, D.C.
          February 27, 2023

                              Respectfully submitted,

                              Linklaters LLP

                              By:   */s/ Adam S. Lurie*
                              Adam S. Lurie
                              Doug Davison
                              Richard C. Smith
                              601 13th St. NW #400
                              Washington, D.C. 20005
                              (202) 654-9200
                              adam.lurie@linklaters.com
                              doug.davison@linklaters.com
                              richard.smith@linklaters.com

                              *Attorneys for Defendant Ramkumar*
                              *Rayapureddy*